## SPRAGUE ELECTRIC RAILWAY & MOTOR CO. v. NASSAU ELECTRIC R. CO.

(Circuit Court of Appeals, Second Circuit.   May 28, 1900.)

### No. 148.

1. PATENTS—CONSTRUCTION OF CLAIMS—ELECTRIC RAILWAY MOTORS.
    Claim 4 of the Sprague patent, No. 324,892, for an improved electric railway motor, must be construed to include as an element the flexible support of the end of the motor opposite the axle, upon which the other end is centered, which is an essential feature of the invention, although such support is not specifically mentioned in that claim, and as so construed the claim is valid.
    Wallace, Circuit Judge, dissenting.

2. SAME—INFRINGEMENT.
    The Sprague patent, No. 324,892, for an improved electric railway motor, covers a device in which the motor frame is centered at one end upon the driven axle, and supported at the other by a flexible connection with the truck frame or car body, and infringement is not avoided by the fact that

the part of the truck frame from which the nose end of the motor is suspended by a spring connection is not itself spring supported. Claims 2, 4, and 6 of such patent *held* infringed.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

The Sprague Electric Railway & Motor Company brought in the circuit court for the Eastern district of New York its bill in equity against the Nassau Electric Railroad Company, which was founded upon the alleged infringement of claims 2, 4, and 6 of letters patent 324,892, dated August 25, 1885, and issued to Frank J. Sprague for an improved electric railway motor. The decree of the court found that the defendant had infringed these three claims, claim 4 being construed as requiring that the restrictive elements mentioned in claims 2 and 6, but not specifically mentioned in claim 4, relating to the manner of suspending the off end of the motor, be added as elements to said claim, and directed an injunction and an accounting. 97 Fed. 609. From this decree each party has appealed, the complainant appealing from so much of the decree as restricted and qualified the injunction ordered against the infringement of claim 4.

Claims 2, 4, and 6 are as follows: "(2) The combination of a wheeled vehicle and an electro-dynamic motor mounted upon and propelling the same, the field magnet of said motor being sleeved upon an axle of the vehicle at one end, and supported by flexible connections from the body of the vehicle at the other end, substantially as set forth." "(4) The combination of a wheeled vehicle, an electro-dynamic motor, mounted upon and propelling the same, the field magnet of said motor being sleeved upon an axle of the vehicle, and the armature of said motor being supported upon the field magnet, and gearing between the armature shaft and the driving wheels of the vehicle, substantially as set forth." "(6) The combination with a wheeled vehicle, supported upon its axles by springs, of an electro-dynamic motor flexibly supported from such vehicle, and centered upon the driving axle thereof, substantially as set forth."

Frederic H. Betts, for complainant.
William H. Kenyon, for defendant.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts as above). The patent in suit, so far as claims 2, 6, and 9 are concerned, was examined by this court in the case of the present complainant against the Union Railway Company (31 C. C. A. 391, 88 Fed. 82), and the subject of the described improvement was fully considered by the circuit court of appeals for the Eighth circuit in Adams Electric Ry. Co. v. Lindell Ry. Co., 40 U. S. App. 482, 23 C. C. A. 223, 77 Fed. 432. Upon an appeal from an order for a preliminary injunction in favor of the present complainant, restraining the present defendant from the infringement of claims 2 and 6, and a cross appeal from an order denying a motion for an injunction against infringement of claim 4, this court was of opinion that claim 4 had never been adjudicated, and that the affidavits did not sufficiently manifest an infringement of the other claims. 37 C. C. A. 286, 95 Fed. 821. The alleged infringement in the present case is by means of a different construction from the one in the last-mentioned case. In the opinion of this court in the Union Case, 31 C. C. A. 391, 88 Fed. 82, the patented invention then and now in suit was described as follows:

"As soon as the use of an electric motor for the propulsion of cars upon a street railway was thought to be attainable, divers methods were invented which were intended to enable the motor to act efficiently, economically, and

certainly upon the car axle. At first the motor was supported by or on the car body, and afterwards it was upheld upon a separate platform. The state of the art upon the subject is so fully stated by Judge Sanborn in Adams Electric Ry. Co. v. Lindell Ry. Co., 23 C. C. A. 223, 77 Fed. 432, 40 U. S. App. 482, that it need not be restated here. Sprague hung the motor under the car body, directly upon the axle of one of the pairs of wheels, by an extension or solid bearing attached directly to the motor. He used a magnet having a yoke and pole pieces, and by sleeving one end upon the axle he caused the armature, which was carried between the poles of the magnet, to be held with firmness, and the armature shaft to be held in alignment with the car axle. The opposite end of the motor was upheld by springs extending to a crossbar on the truck frame. He also relieved the weight upon the axle by a spring support from the truck of the vehicle. The motor was thus hung below the car, one end being centered upon the axle, and the other end being flexibly attached by springs to the truck frame. The effect of the mode of construction is explained in the specification as follows: 'The armature being carried rigidly by the field magnet, these two parts must always maintain precisely the same relative position under every vertical or lateral movement of the wheels or of the car body; and, as the wheel magnet which carries the armature is itself centered by the axle of the wheels to which the armature shaft is geared, the engaging gears also must always maintain precisely the same relative position. At the same time the connection of the entire motor with the truck is through springs, so that its position is not affected by the movements of the truck on its springs.' The simplicity and comparative lightness of the general plan upon which this motor was constructed, and the adaptability of the means to the required result, made the motor successful, and other pre-existing methods of construction disappeared to a great extent. The question of anticipation by a pre-existing electric railway motor may be laid out of the case, for it is not asserted that any patent prior to the date of the patent in suit described an electric motor geared to and propelling a vehicle, and supported at one end by sleeving extension pieces from the field magnet upon the driven axle, and at the other end by a flexible connection with the truck or body of the vehicle. * * * The Sprague invention was not a pioneer, and was not of a broad character, but it was a distinct and clearly-defined invention in the method of hanging electric motors for vehicles, and its gist consisted in the utilization of the frame of the motor itself with the necessary extension, and the centering of the motor on the driven axle by extension pieces from the field magnet at one end, and in its flexible suspension at the other end to the car truck, the armature being carried rigidly by the field magnet."

No objection was apparently relied upon in addition to those heretofore urged against the validity of the patent or the soundness of the patentable character of the invention as thus described. The point of the defense which is pressed is that the defendant's motor as mounted upon its railway car does not infringe either of the three claims, because it is not flexibly supported at its off end from the body of the vehicle or from the truck. If claim 4 does not necessarily include such support, its validity is denied. The proposition in regard to infringement is that the Sprague invention is limited to a combination in which the car body or car truck which supports the nose end of the motor is itself supported upon the car springs of the vehicle, and that a substantial portion of the invention consisted in supporting the nose end of the motor directly from the spring-supported car body or spring-supported car truck, whereas the defendant does not thus suspend its motor. It sleeves the other end of its motor upon the driven axle, in accordance with the Sprague invention.

It is conceded that the structure in the Union Railway Case, which

was held to infringe claims 2 and 6, was substantially the same in principle of construction, though not in detail, as the defendant's structure in the present suit, and it is a fact that the able solicitors of the Union Railway Company did not make the present defendant's point of noninfringement, while they vigorously defended themselves against the charge of infringement, and attacked in like manner the validity of the patent. The present defendant takes up a defense which was disregarded by its energetic predecessor in the litigation. Sprague says that the yoke of his field magnet was hung from a cross-piece of the truck by heavy springs, and the truck was evidently the old form which was in use on ordinary cars in 1885. The defendant uses what is known as the "Dupont Truck," one of the forms of modern trucks which consists of two parts. The lower part of this compound truck, which the defendant calls a "motor truck frame," consists, in general, of the equalizing bars and cross frame which carry the wheel bearings and wheels, and the upper part, resting upon the lower part by springs, consists of two longitudinal plates, while springs resting upon these plates uphold the car body. The lower part is a part of the car truck. The nose end of the motor is spring-supported from a crossbar which connects the opposite sides of the lower part of the truck. The Sprague motor was hung from the cross-piece of the truck by springs, if a truck existed, and in the Dupont truck the off end of the motor is not incorporated with or fastened into a frame, but is flexibly connected by springs with the crossbar of the lower part of the truck, which, in its turn, flexibly supports the car body. That a spring in the defendant's structure intervenes between the off end of the motor and what is called the motor truck frame, and that the motor is not fastened to this frame, as in the Finney patent, are not denied, but the spring is styled a "cushioning spring," connected with a rigid frame, which gives a degree of independent vertical movement to the motor, but without the Sprague flexibility between the motor and the car truck. It is manifest that in the Dupont truck there is not the degree of flexibility which is apparent in the Sprague specification and drawings, but an intentional flexibility was imparted to the spring-supported motor which was denied in the Finney invention, and which the Dupont truck preserved.

In view of the fact that the invention was the hanging of the motor below the car, one end being centered upon the axle, and the other end being flexibly attached by springs to the truck frame, it cannot be subdivided, and claim 4 must be construed to include the flexible support of the off end of the motor from an independent structure which is the truck frame, or from the independently mounted body of the vehicle.

The decree of the circuit court is affirmed, without costs of this court, as the appeal of neither party is sustained.

WALLACE, Circuit Judge. I am unable to concur in so much of the opinion of Judge SHIPMAN as sustains the validity of claim 4 by reading into it the flexible supporting devices at the end opposite the driving wheels. Construed as I think the claim should be, with

this feature eliminated, I think it is void for want of patentable nov·
elty, in view of the prior state of the art, if not in view of the prior
patent to Finney alone.

In other respects I concur.