# CROSBY v. RIDOUT.

COURTS; JURISDICTION; EQUITABLE LIENS; BANKRUPTCY; BONA FIDE PUR-
CHASERS; RECORDATION OF INSTRUMENTS; NOTICE.

1. The supreme court of the District of Columbia sitting as an equity
   court has jurisdiction to entertain a suit for the establishment of
   an equitable lien against the real estate of a bankrupt; and the decree
   of that court will be given proper weight by the court of bankruptcy
   in the distribution of the bankrupt's estate.

2. A trustee in bankruptcy does not take the bankrupt's property as an
   innocent purchaser, but takes title subject to all equities, liens, or
   encumbrances, whether created by operation of law or by the bank-
   rupt, which existed against the property in the bankrupt's hands.

3. An equitable lien attaching to the bankrupt's property before he be-
   comes a bankrupt is superior to the liens of judgment creditors and
   claims of general creditors. (Following *Hume* v. *Riggs*, 12 App. D.
   C. 367.)

4. A judgment creditor stands in the place of his debtor, and can only
   take his property subject to the equitable charges to which it was
   justly liable in the hands of the debtor at the time of the rendition of
   the judgment.

5. The creditors mentioned in sec. 499, D. C. Code (31 Stat. at L. 1268, chap.
   854), providing that deeds of real estate shall take effect from the deliv-
   ery, except as to creditors and bona fide purchasers without notice, as to
   whom they take effect from date of delivery for record, are creditors
   who in the interval of time have fastened upon the property for the
   payment of their debts, and not general creditors.

6. The recording of a deed of trust is not constructive notice to anyone
   that the grantor, at the time a stranger to the record title, was the
   grantor in a prior and unrecorded deed.

No. 1646.   Submitted April 5, 1906.   Decided May 1, 1906.
VOL. XXVII.—31.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, dismissing a bill in equity to establish a lien upon certain real estate.

*Reversed.*

The COURT in the opinion stated the facts as follows:

The appellant, Louisa A. Crosby, by her amended bill in equity, filed January 16, 1906 (the original bill having been filed May 12, 1905), alleges that she employed John Ridout, attorney at law, to invest $1,500 for her. On January 12, 1899, Mr. Ridout informed the appellant that he had loaned her money to Abbot E. Jones, and that it was secured by a deed of trust from Jones and wife on part of lot 12 in square 724 in this District. She also received Jones's note for $1,500, dated January 10, 1899. The note recited that it was secured by a deed of trust on the real estate mentioned from Jones and wife to John Ridout and Irving Williamson, trustees. The deed of trust was recorded January 11, 1899. The certificate of title from Mr. Ridout stated that the title to said real estate was good in Abbot E. Jones, subject only to complainant's deed of trust just mentioned. Interest was regularly paid to January 10, 1905.

On January 10, 1899, and until January 24, 1905, when the appellee, Merillat, was appointed trustee in bankruptcy for Mr. Ridout, the record title to said real estate was in Ridout, and since Mr. Merillat became trustee in bankruptcy he has collected the rents from such real estate.

Upon information recently acquired by the appellant, her bill alleges that Jones never had any beneficial interest in said real estate, although he held the legal title thereto, and Jones and wife executed said deed of trust to secure the appellant as an accommodation to Mr. Ridout, who retained the money and paid the interest regularly. The real estate described in the deed of trust was the same heretofore described as owned by Mr. Ridout on January 10, 1899.

The appellant alleges that Mr. Ridout and his wife "conveyed by good and sufficient deed to Jones, prior to the said

deed of trust, the real estate" before described; that through
oversight such deed was not recorded, and upon inquiry Mr.
Ridout informed appellant that it was left in his possession for
record, but had been lost, or was destroyed by fire which oc-
curred in the office building where Mr. Ridout's law offices were
located, that fire having destroyed many valuable papers in
his possession. These facts, says appellant, create a lien upon
said real estate in her favor, which a court of equity will ren-
der certain.

The bill proceeds to allege that the recording of the deed of
trust from Jones and wife to Ridout and Williamson, trustees,
was constructive notice of appellant's interest in such real estate,
at least of a lien superior to the lien of subsequent judgment
creditors, and to all claim, right, title, and interest of general
creditors of Ridout and of his trustee in bankruptcy.

On March 16, 1905, Williamson and Ridout, trustees, John
Ridout in his own right, Frances E., his wife, Jones and wife,
and Louisa A. Crosby, the appellant, united in a deed convey-
ing said real estate to C. W. Clagett and P. M. Brown, trustees,
for the purpose of perfecting the title to said real estate, Brown
and Clagett becoming substituted trustees, said real estate being
conveyed to them upon the uses and trusts set forth in the
aforementioned deed of trust from Jones and wife to the appel-
lant, who joined in this deed, consenting to the substitution
of trustees. Such conveyance vested in the new trustees the
inchoate dower right of Mrs. Ridout in said real estate.

Appellant then alleges that there was a deed of trust on said
real estate to secure a debt of $20,000, and that said debt has
been paid, the trustees therein being made parties and called
upon to discover whether or not such loan has been paid. The
bill recites the recovery on October 15, 1904, by the Citizens'
National Bank, of a judgment against Ridout for $2,501.87,
and on November 11, 1904, a judgment by the same plaintiff
against said Ridout for $2,713.74, these with interest, and both
recovered in the supreme court of this District, and that such
judgments by the adjudication of the bankruptcy of Mr. Ridout
are void.

It is alleged that writs of fieri facias were issued and levied on certain real estate, but not on the real estate in the bill described, and the bill avers that the appellant is entitled to have a marshaling of assets. The prayer for relief relied on is that for a decree establishing the title to the real estate described in the bill in Abbot E. Jones prior to the date of the deed of trust of Jones and wife to Ridout and Williamson, trustees, and establishing an equitable lien upon said real estate in favor of appellant superior to the rights of general and judgment creditors of said Ridout, and also for general relief.

To this bill, Charles H. Merillat, trustee, demurred, and, after hearing, the court below sustained such demurrer and dismissed the bill, and the complainant appealed to this court.

*Mr. Charles W. Clagett* and *Mr. Percival M. Brown* for the appellant.

*Mr. Mason N. Richardson, Mr. Earl Ambrose,* and *Mr. Charles H. Merillat* for the appellees.

Mr. Justice McComas delivered the opinion of the Court:

The only question before us is whether appellant's bill states a case which entitles her to a decree ascertaining and establishing such equitable lien, or whether the adjudication of bankruptcy against Mr. Ridout excluded the court below from taking jurisdiction to decide the question raised by the bill. The learned court below dismissed the bill because, upon the case therein presented, the bankruptcy act (chapter 541, July 1, 1898) excluded the jurisdiction of the court below sitting in equity.

In the first place, we assume that the appellant's bill sufficiently avers that Mr. Ridout, with or without his wife, executed and acknowledged a deed in proper form to Jones, and that such acknowledgment was duly certified, and that Mr. Ridout delivered such deed to Jones, for, of course, it could not be a deed until there was a delivery. We think the allegation respecting the deed should be taken to import so much,

and that thereafter such deed was given to Mr. Ridout to be recorded, and was lost or destroyed by fire. If Mr. Ridout conveyed the lot described to Jones, and thereafter Jones and wife executed this deed of trust, years before Mr. Ridout's bankruptcy, of course the appellant's lien would have been valid *inter partes,* and would have taken effect from the date of its delivery, except as to some creditors and subsequent purchasers, without notice.

The case made by the appellant's bill called upon the court to ascertain whether title to said land had passed from Ridout to Jones, and, if so, thereupon to decree that the appellant had an equitable lien upon such lot to secure her loan. So far as now appears, there were neither bona fide purchasers nor mortgagees subsequently. Two judgments were obtained, and both were void by reason of the adjudication of bankruptcy within four months thereafter, as the bill alleges.

We find nothing in the bankruptcy act or its amendments to interfere with the ordinary jurisdiction of the court below, as a court of equity, to decree an equitable lien in favor of the appellant, if, as by the bill appears, she be entitled thereto. In *Bardes* v. *First Nat. Bank,* 178 U. S. 524, 44 L. ed. 1175, 20 Sup. Ct. Rep. 1000, the court was called on to decide whether, under the bankruptcy act, a district court of the United States in which proceedings in bankruptcy have been commenced and are pending has jurisdiction to entertain a suit by a trustee in bankruptcy against a person holding and claiming as his own property alleged to have been conveyed to him by the bank in fraud of creditors. In determining this question the court carefully construed section 2 and section 23 of the bankruptcy act, upon which the determination of this question depends. Section 2 makes the district court of the United States and the supreme court of this district courts of bankruptcy, and invests them with numerous powers mentioned. Section 23 is as follows:

"Sec. 23. Jurisdiction of United States and State courts: *a.* The United States circuit courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and ad-

verse claimants, concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"*b.* Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt whose estate is being administered by such trustee might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant.

"*c.* The United States circuit courts shall have concurrent jurisdiction with the courts of bankruptcy, within their respective territorial limits, of the offenses enumerated in this act." 30 Stat. at L. 552, chap. 541, U. S. Comp. Stat. 1901, p. 3431.

Later Mr. Justice Gray says: "The jurisdiction of the courts of the United States over all matters and proceedings in bankruptcy, as distinguished from independent suits at law or in equity, was of course exclusive. But it was well settled that the jurisdiction of such suits, conferred by the 2d section of the act of 1867 upon the circuit and district courts of the United States for the benefit of an assignee in bankruptcy, was concurrent with that of the State courts. In *Eyster* v. *Gaff,* 91 U. S. 521, 23 L. ed. 403, this court, speaking by Mr. Justice Miller, said: 'The opinion seems to have been quite prevalent in many quarters at one time, that the moment a man is declared bankrupt the district court which has so adjudged draws to itself by that act, not only all control of the bankrupt's·property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the circuit courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person who contested with the assignee any matter growing out of disputed rights of property or of contracts, into the bankrupt court by the service of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against this view. The debtor of a bankrupt, or the man

who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not devested those courts of jurisdiction in such actions. If it has for certain classes of actions conferred a jurisdiction for the benefit of the assignee in the circuit and district courts of the United States, it is concurrent with and does not devest that of the State courts.'

"Under the act of 1867, then, the distinction between proceedings in bankruptcy, properly so called, and independent suits, at law or in equity, between the assignee in bankruptcy and an adverse claimant, was distinctly recognized and emphatically declared. Jurisdiction of such suits was conferred upon the district courts and circuit courts of the United States by the express provision to that effect in section 2 of that act, and was not derived from the other provisions of sections 1 and 2, conferring jurisdiction of proceedings in bankruptcy. And the jurisdiction of suits between assignees and adverse claimants, so conferred on the circuit and district courts of the United States, did not devest or impair the jurisdiction of the State courts over like cases."

Mr. Justice Gray further analyzes section 2 of the present bankruptcy act, and says it includes among the powers specifically conferred upon the courts of bankruptcy those to "(7) cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided."

Respecting section 2, Mr. Justice Gray concludes: "The section nowhere mentions civil actions at law, or plenary suits in equity. And no intention to vest the courts of bankruptcy with jurisdiction to entertain such actions and suits can reasonably be inferred from the grant of the incidental powers, in clause 6, to bring in and substitute additional parties 'in proceedings in bankruptcy,' and, in clause 15, to make orders, issue process, and enter judgments 'necessary for the enforcement of the provisions of this act.'

"The chief reliance of the appellant is upon clause 7. But

this clause, in so far as it speaks of the collection, conversion into money, and distribution of the bankrupt's estate, is no broader than the corresponding provisions of section 1 of the act of 1867; and in that respect, as well as in respect to the further provision authorizing the court of bankruptcy to 'determine controversies in relation thereto,' it is controlled and limited by the concluding words of the clause, 'except as herein otherwise provided.'

"These words, 'herein otherwise provided,' evidently refer to section 23 of the act, the general scope and object of which, as indicated by its title, are to define the 'jurisdiction of United States and State courts' in the premises. The 1st and 2d clauses are the only ones relating to civil actions and suits at law or in equity.

"The 1st clause provides that 'the United States circuit courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy' (thus clearly recognizing the essential difference between proceedings in bankruptcy, on the one hand, and suits at law or in equity, on the other), 'between trustees as such and adverse claimants, concerning the property acquired or claimed by the trustees,' restricting that jurisdiction, however, by the further words, 'in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupt and such adverse claimants.' This clause, while relating to the circuit courts only, and not to the district courts of the United States, indicates the intention of Congress that the ascertainment, as between the trustee in bankruptcy and a stranger to the bankruptcy proceedings, of the question whether certain property claimed by the trustee does or does not form part of the estate to be administered in bankruptcy, shall not be brought within the jurisdiction of the national courts solely because the rights of the bankrupt and of his creditors have been transferred to the trustee in bankruptcy.

"But the 2d clause applies both to the district courts and to the circuit courts of the United States, as well as to the State

courts. This appears not only by the clear words of the title of the section, but also by the use, in this clause, of the general words, 'the courts,' as contrasted with the specific words, 'the United States circuit courts,' in the 1st and in the 3d clauses.

"The 2d clause positively directs that 'suits by the trustees shall only be brought or prosecuted in the courts where the bankrupt whose estate is being administered by such trustee might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant.'

"Had there been no bankruptcy proceedings, the bankrupt might have brought suit in any State court of competent jurisdiction; or, if there was a sufficient jurisdictional amount, and the requisite diversity of citizenship existed, or the case arose under the Constitution, laws, or treaties of the United States, he could have brought suit in the circuit court of the United States. Act of August 13, 1888, chap. 866; 25 Stat. at L. 434, U. S. Comp. Stat. 1901, p. 508. He could not have sued in a district court of the United States, because such a court has no jurisdiction of suits at law or in equity between private parties, except where, by special provision of an act of Congress, a district court has the powers of a circuit court, or is given jurisdiction of a particular class of civil suits.

"It was argued for the appellant that the clause cannot apply to a case like the present one, because the bankrupt could not have brought a suit to set aside a conveyance made by himself in fraud of his creditors. But the clause concerns the jurisdiction only, and not the merits, of a case; the forum in which a case may be tried, and not the way in which it must be decided; the right to decide the case, and not the principles which must govern the decision. The bankrupt himself could have brought a suit to recover property which he claimed as his own, against one asserting an adverse title in it; and the incapacity of the bankrupt to set aside his own fraudulent conveyance is a matter affecting the merits of such an action, and not the jurisdiction of the court to entertain and determine it.

"The bankrupt acts of 1867 and 1841, as has been seen, each

contained a provision conferring in the clearest terms on the circuit and district courts of the United States concurrent jurisdiction of suits at law or in equity between the assignee in bankruptcy and an adverse claimant of property of the bankrupt. We find it impossible to infer that when Congress, in framing the act of 1898, entirely omitted any similar provision, and substituted the restricted provisions of section 23, it intended that either of those courts should retain the jurisdiction which it had under the obsolete provision of the earlier acts.

"On the contrary, Congress, by the 2d clause of section 23 of the present bankrupt act, appears to this court to have clearly manifested its intention that controversies not strictly or properly part of the proceedings in bankruptcy, but independent suits brought by the trustee in bankruptcy to assert a title to money or property as assets of the bankrupt against strangers to those proceedings, should not come within the jurisdiction of the district courts of the United States, 'unless by consent of the proposed defendant,' of which there is no pretense in this case.

"One object in inserting this clause in the act may well have been to leave such controversies to be tried and determined, for the most part, in the local courts of the State, to the greater economy and convenience of litigants and witnesses. See *Shoshone Min. Co.* v. *Rutter,* 177 U. S. 505, 513, 44 L. ed. 864, 867, 868, 20 Sup. Ct. Rep. 726." *Bardes* v. *First Nat. Bank,* 178 U. S. 535, 536, 537, 538, 44 L. ed. 1181, 1182, 20 Sup. Ct. Rep. 1000.

We have fully quoted from this important case because, in our opinion, it determines we must here decide the question in exactly the opposite way from the determination of the same question by the learned court below.

In *Mitchell* v. *McClure,* 178 U. S. 539, 44 L. ed. 1182, 20 Sup. Ct. Rep. 1000, the United States district court as a court in bankruptcy held that it had no jurisdiction to entertain an action of replevin by the trustee in bankruptcy to recover goods from defendants, to whom it was alleged the bankrupt had conveyed them within four months before the bankruptcy proceed-

ings in his case; and the Supreme Court affirmed this ruling; while in *White v. Schloerb,* 178 U. S. 542, 546, 44 L. ed. 1183, 1186, 20 Sup. Ct. Rep. 1007, where a sheriff had executed a writ of replevin upon goods which had passed into the possession of a referee in bankruptcy, the Supreme Court affirmed the direction of the district court that such goods be delivered to the trustee in bankruptcy, to keep them apart from other property to abide the further order of the court. Mr. Justice Gray said: "The questions certified concern not the trial of the title to these goods, but only the judicial custody and lawful possession of them." And again, with great caution, the court added: "Not going beyond what the decision of the case before us requires, we are of opinion that the judge of the court of bankruptcy was authorized to compel persons who had forcibly and unlawfully seized and taken out of the judicial custody of that court property which had lawfully come into its possession as part of the bankrupt's property, to restore that property to its custody; and therefore our answer to the first question must be: 'The district court sitting in bankruptcy had jurisdiction by summary proceedings to compel the return of the property seized.'" *White* v. *Schloerb,* pp. 547, 548, 178 U. S., p. 1187, 44 L. ed., p. 1009, 20 Sup. Ct. Rep.

At the same time, in *Hicks* v. *Knost,* 178 U. S. 541, 44 L. ed. 1183, 20 Sup. Ct. Rep. 1006, where the question was, has a district court of the United States jurisdiction to entertain a bill in equity filed by a trustee in bankruptcy appointed by it, against a fraudulent grantee or transferee of the bankrupt resident in his district, to recover property belonging to the estate of the bankrupt and by him fraudulently conveyed to the defendant? Mr. Justice Gray answered: "For the reasons stated in *Bardes* v. *First Nat. Bank, supra,* the answer to this question must be that the district court has such jurisdiction by the consent of the proposed defendant, but not otherwise." *Hicks* v. *Knost,* p. 542, 178 U. S., p. 1183, 44 L. ed., p. 1007, 20 Sup. Ct. Rep.

We conclude that the learned court below erred in deciding that the supreme court of the District of Columbia holding an

equity court ought not to entertain jurisdiction in a suit for the establishment of an equitable lien against real estate of a bankrupt. Of course, it remains to be decided whether the appellant can maintain the case made by her bill. If she should succeed, we do not doubt the district court in bankruptcy would give proper weight to such decree of the court of equity. Judge Thompson, in *Hicks* v. *Knost,* 94 Fed. 628, gives a good reason for our conclusion: "It seems to me that it was the intention of Congress to permit such controversies, when they could not be settled by compromise or arbitration, to be litigated in the courts which, under the general law, would have jurisdiction of them, just as assignees under State insolvency laws bring suits in courts of general jurisdiction to collect assets which are afterwards distributed by the court of insolvency. The bankrupt court controls the trustee, supervises the administration of his trust, settles his accounts, and orders the distribution of the moneys in his hands, but is not required to assume the burden of the litigations necessary for the collection of assets; nor are adverse claimants of property acquired or claimed by trustees to be put to unnecessary inconvenience and expense in litigating their rights." Accordingly, Judge Thompson overruled the motion for an injunction and dismissed the bill upon the ground that the district court was without jurisdiction to entertain a suit in equity by the trustee in bankruptcy to compel an accounting by a creditor for money paid in fraud of other creditors. On appeal, this ruling was sustained. See *Hicks* v. *Knost,* 178 U. S. 541, 44 L. ed. 1183, 20 Sup. Ct. Rep. 1006. See also *Metcalf Bros.* v. *Barker,* 187 U. S. 165, 47 L. ed. 122; 23 Sup. Ct. Rep. 67; *Re Spitzer,* 66 C. C. A. 34, 130 Fed. 879, 12 Am. Bankr. Rep. 346. The supreme court of New Hampshire thus expresses it: "The jurisdiction conferred on the Federal courts in actions of this character between trustees in bankruptcy and strangers to the bankruptcy proceedings is not exclusive, but, on the contrary, it is well settled that in all questions of title to property derived through such proceedings the state courts have concurrent jurisdiction." *Truda* v. *Osgood,* 71 N. H. 185, 51 Atl. 633.

Nor do we consider that, under our recording statutes, the

trustee in bankruptcy takes the bankrupt's property as an innocent purchaser. We agree with the court in *Chattanooga Nat. Bank* v. *Rome Iron Co.* 102 Fed. 761, where the court, after comparing provisions of the bankruptcy act of 1867 with relevant provisions of the bankruptcy act of 1898, concludes: "I am unable to see how any distinction can be drawn, favorable to the contention of counsel for the trustee, between the two acts. The purpose of both acts, although different language is used, seems to be to vest in the trustee the title to the entire estate of the bankrupt; and no distinction can be perceived which justifies the inference that under the last act the trustee takes the property of the bankrupt as an innocent purchaser, without notice, and that in the former he did not." And in *Re New York Economical Printing Co.* 49 C. C. A. 133, 110 Fed. 518, the circuit court of appeals decided: "The bankrupt act does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt or to his creditors at the time when the trustee's title accrues. The present act, like all preceding bankrupt acts, contemplates that a lien good at that time, as against the debtor and as against all of his creditors, shall remain undisturbed."

The assignee under the last bankruptcy act, and the trustee under the present bankruptcy law, take only such title as the bankrupt had subject to all equities, and therefore what the Supreme Court says in *Stewart* v. *Platt,* 101 U. S. 731, 739, 25 L. ed. 816, 818, applies to the appellee, Merillat, trustee: "He takes the property in the same 'plight and condition' that the bankrupt held it. *Winsor* v. *McLellan,* 2 Story, 492, Fed. Cas. No. 17,887." "The assignee can assert, in behalf of the general creditors, no claim to the proceeds of the sale of that property which the bankrupts themselves could not have asserted in a contest exclusively between them and their mortgagee." See also *Burbank* v. *Bigelow,* 92 U. S. 179, 182, 23 L. ed. 542, 543.

There is no doubt that the trustee under the present law takes the title subject to all equities, liens, or encumbrances, whether created by operation of law or by the bankrupt, which existed against the property in the hands of the bankrupt.

Should the court below finally determine and decree the equitable lien sought by the appellant, the trustee should, and we have no doubt the bankruptcy court would, give its proper place to such lien in the distribution of the bankrupt's estate. Such lien would be superior to the liens of judgment creditors and to the claims of general creditors. As Mr. Justice Shepard said in *Hume* v. *Riggs,* 12 App. D. C. 367: "Unless precluded by the terms of some statute expressly intended to change it, the rule has always prevailed that the equity under a trust or a contract *in rem* is superior to that under a judgment lien. The claimant under the contract *in rem* has an equity to the specific thing which binds the conscience of his grantor; whilst the judgment creditor, who has advanced nothing on the faith of the specific thing, is entitled only to that which his debtor really has at the time or could honestly convey or encumber; his beneficial interest and nothing more." And the court cites numerous Maryland cases sustaining the proposition that if a party makes a mortgage, but it proves defective by reason of some informality or omission, such as failure to record in due time, or the like, the instrument binds the conscience of the mortgagor, and will be enforced by a court of equity.

The courts in England and in Maryland uniformly hold that a judgment, being but a general lien, must be subordinated to the superior equities of a prior specific lien. For if the property be charged in equity before the entry of the judgment, the judgment will not affect such charge. The judgment creditor stands in the place of his debtor, and can only take the property of his debtor subject to the equitable charges to which it was justly liable in the hands of the debtor at the time of the rendition of the judgment. We are aware of no statute modifying this principle in this District. See *Dyson* v. *Simmons,* 48 Md. 213; *Alexander* v. *Ghiselin,* 5 Gill. 187; *Valentine* v. *Seiss,* 79 Md. 187, 28 Atl. 892. It is to be remembered, however, that both judgments are alleged in appellant's bill to have been entered within four months before the adjudication of bankruptcy, and such judgments are therefore void. Section 499 of the Code, (31 Stat. at L. 1268, chap. 854), does not affect the question here. For stronger reasons such an equitable

lien is superior to the claims of general creditors. Creditors mentioned in the section of the Code just noted mean creditors who in the interval of time have fastened upon the property for the payment of their debts, and not general creditors. See *Re Schmitt,* 109 Fed. 267; *Re Shirley,* 50 C. C. A. 252, 112 Fed. 303.

We agree with appellees' counsel that the recording of the deed of trust from Jones and wife to appellant is not constructive notice to anyone that Jones, then a stranger to the record title, was grantee from Mr. Ridout of the lot described in the bill.

In our opinion the learned court below erred in sustaining the demurrer and in passing the order dismissing the bill. Such order must be reversed, with costs, and the suit remanded to the court below for further proceedings not inconsistent with this opinion, and it is so ordered.                    *Reversed.*